UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOTUL S.A., a French corporation,<br><br>Plaintiff,<br><br>v.<br><br>USA WHOLESALE LUBRICANT, INC., a California corporation; USA AUTO SUPPLY 1 INC., a California corporation; USA AUTOMOTIVE SUPPLY & LUBRICANTS, INC., a California corporation; MAHER A. FATEH, an individual; and DOES 1-25, inclusive,<br><br>Defendants. | Case No.  4:22-cv-04841-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTIONS TO DISMISS, WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 43, 50 |

Now before the Court are the motions to dismiss filed by Defendants USA Automotive Supply & Lubricants, Inc. ("USA Auto") and Maher A. Fateh ("Mr. Fateh"). The Court has considered the parties' papers, relevant legal authority, and the record in this case and, for the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART the motions to dismiss.

**BACKGROUND**

Plaintiff MOTUL S.A. ("Motul") is a global, French company that manufactures high-end lubricants for motor engines. (First Amended Complaint ("FAC") ¶ 1.) Motul imports and sells its products in the United States through its North American business unit, Motul USA, Inc., and promotes the sale of Motul products through authorized, wholesale distributors. (*Id.* ¶ 12.) Mr. Fateh is alleged to "own, operate, dominate, and control" USA Auto and the other corporate

1

defendants, USA Wholesale Lubricant, Inc. ("USA Wholesale") and USA Auto Supply 1 Inc. ("Auto Supply 1"), as his "alter ego companies."[1] (*Id.* ¶¶ 2, 10.) Mr. Fateh is alleged to be an officer of USA Auto and Auto Supply 1 and a director of USA Wholesale. (*Id.*)

Motul alleges it owns trademarks in the word mark "MOTUL": United States Patent and Trademark Office ("USPTO") Registration Nos. 1870921, 1333932, and 6804466. (FAC ¶ 13.) The trademarks cover "MOTUL" in typed letters for chemicals used in the industry. (*Id.*) The trademarks also cover the word "MOTUL" in the color white on a red rectangular background for use in oils and greases used in the industry and use in wholesale store services. (*Id.*)

Motul alleges, on information and belief, that USA Auto was an authorized wholesale distributor for Motul USA, Inc. in Hayward, California for approximately three years. (FAC ¶ 15.) During that time, USA Auto purchased and sold Motul 5 W/30 and 5W/40 motor oil varieties. (*Id.*) USA Auto and Motul USA, Inc. terminated the distributor contract in 2020. (*Id.* ¶ 16.) Motul alleges, on information and belief, that after the parties terminated the distributor contract, USA Auto maintained an excess inventory of unsold Motul motor oil and empty Motul oil drums, which previously were filled with genuine Motul oil. (*Id.* ¶ 18.) Motul alleges, on information and belief, that USA Auto continued to sell Motul motor oil to retail customers without authorization. (*Id.* ¶ 19.) Motul also alleges, on information and belief, that Defendants sold "lesser quality motor oil" disguised as Motul motor oil by reusing empty Motul oil drums containing the Motul trademarks. (*Id.* ¶ 23.) Motul also alleges, on information and belief, that Defendants used Motul trademarks in connection with advertisements for "non-authentic" Motul products. (*Id.* ¶ 25.)

On July 19, 2021, Motul's attorney sent Mr. Fateh a cease and desist letter regarding his alleged use of the Motul trademarks and sale of counterfeit motor oil. (*Id.* ¶ 28.) Motul alleges, on information and belief, that Defendants continued to use the Motul trademarks in connection with the sale of "counterfeit" motor oil after they received the letter. (*Id.* ¶ 29.)

On March 17, 2023, Motul filed its amended complaint. (Dkt. No. 35.) Motul brings

---

[1] Motul refers to USA Auto Supply 1, Inc. as "USAUTO 1" in its FAC.

claims for alleged violations of 15 U.S.C. sections 1114 and 1125(c) based on trademark infringement, dilution, counterfeiting, and unfair competition. Motul also brings state law claims for unfair competition pursuant to California's Business and Professions Code sections 17200, *et seq.* (the "UCL Claim") and California common law. (FAC ¶¶ 33-79.)

## ANALYSIS

**A. Motion to Dismiss for Insufficient Service of Process Under Federal Rule of Civil Procedure 12(b)(5) ("Rule 12(b)(5)").**

    **1. Applicable Legal Standard.**

Mr. Fateh moves to dismiss for insufficient service of process, under Rule 12(b)(5). Federal courts cannot exercise personal jurisdiction over a defendant without proper service of process. *Omni Capital Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97, 104 (1987). To determine whether service of process was proper, courts look to the requirements of Federal Rule of Civil Procedure 4 ("Rule 4"). Motul has the burden of establishing validity of service of process. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). In general, a process server's return of service constitutes prima facie evidence of the facts stated therein, which "can be overcome only by strong and convincing evidence." *S.E.C. v. Internet Solutions for Business, Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007) (internal quotations omitted).

    **2. Motul Properly Served Mr. Fateh.**

Rule 4(e) governs service upon individuals within the United States. Under Rule 4(e)(1), service on an individual is sufficient if it is carried out under the law of the state in which the district court is located or where service is made, in this case California. California Code of Civil Procedure section 415.20(b) provides:

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, . . . a summons may be served by leaving a copy of the summons and complaint at the person's . . . usual place of business . . . in the presence of . . . a person apparently in charge of his or her office, place of business, . . . at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

1        A plaintiff must make reasonably diligent efforts to effect personal delivery before
2   resorting to substituted service. *Id.* "Ordinarily, . . . two or three attempts at personal service at a
3   proper place should fully satisfy the requirement of reasonable diligence and allow substituted
4   service to be made." *Espindola v. Nunez*, 199 Cal. App. 3d 1389, 1392 (1988). Motul submitted
5   evidence regarding its efforts to personally serve Mr. Fateh at his home address on six occasions.
6   (Dkt. No. 54-1, Declaration of Zachariah R. Tomlin in Opposition to Defendants' Motion
7   ("Tomlin Opp. Decl."), ¶¶ 2, 4, 5, Ex. 1.)
8        Motul then attempted to personally serve Mr. Fateh at his alleged business address. (*Id.* ¶
9   6, Ex. 2.) Motul submitted evidence regarding its efforts to locate Mr. Fateh's business address
10  using public information databases. (*Id.* ¶ 1.) The search identified Mr. Fateh as the president of
11  Auto Supply 1 with an address of 3470 Depot Rd., Hayward, CA 94545. (*Id.* ¶ 3.) Motul asserts
12  that during the first service attempt at 3470 Depot Rd., an unnamed receptionist confirmed that
13  Mr. Fateh was "not in at this time." (Dkt. No. 54, Plaintiff's Opposition ("Opp.") at 5:3-5; Tomlin
14  Opp. Decl., Ex. 2.) On the third attempt to personally serve Mr. Fateh at 3470 Depot Rd., Motul
15  elected to rely on substitute service and served an unnamed receptionist at that address. It then
16  sent a copy of the summons and complaint to Mr. Fateh at that address. (Tomlin Opp. Decl. ¶¶ 7,
17  8, Ex. 2.)
18       The Court finds that Motul has made a prima facie showing that service was effected in the
19  manner in which it attests, *i.e.* that Motul made reasonably diligent efforts to effect personal
20  delivery at Mr. Fateh's home and his business address before resorting to substituted service. *See*
21  *Internet Solutions*, 509 F.3d at 1165. Mr. Fateh can overcome this prima facie showing only with
22  "strong and convincing" evidence that he was not served at his "usual place of business." *Id.* at
23  1163.
24       The only evidence Mr. Fateh submits is a corporate document filed with the California
25  Secretary of State that shows Auto Supply 1's business address as 3668 Enterprise Ave., Hayward,
26  CA 94545. (Dkt. Nos. 44, 51, Request for Judicial Notice ("RJN"), Ex. J.) Although that address
27  is not the address at which Motul effected substituted service, Mr. Fateh did not submit a
28  declaration attesting that 3470 Depot Rd. is not his "usual place of business." Without additional

4

1  evidence, Exhibit J does not necessarily contradict the assertion that 3470 Depot Rd. is Mr. Fateh's "usual place of business."

The Court concludes that Mr. Fateh's evidence is insufficient to overcome Motul's prima facie showing of service, and it DENIES Mr. Fateh's motion to dismiss for insufficient service of process.

**B.     Motion to Dismiss for Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and Request for Judicial Notice.**

   **1.     Applicable Legal Standard.**

Defendants move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a claim for relief will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-247 (9th Cir. 1990).

Generally, when evaluating a motion to dismiss, district courts may not consider material outside the pleadings. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). There are two exceptions to this rule: the doctrine of incorporation by reference and judicial notice under

Federal Rule of Evidence 201 ("Rule 201"). Each mechanism permits district courts to consider materials outside a complaint, but each does so for different reasons. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-03 (9th Cir. 2018).

Under Rule 201, a court may take judicial notice of facts that are "not subject to reasonable dispute because [they] (1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources who accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Although a court may take judicial notice of matters of public record and properly consider those matters when evaluating a motion to dismiss, a court may not take judicial notice of disputed facts contained in such public records. *Lee*, 250 F.3d at 689 (quotations and citations omitted).

Defendants ask the Court to take judicial notice of fifteen exhibits (Exhibits A-O) submitted in connection with their motions to dismiss. Defendants argue that the Court may consider these documents because they are matters of public record. Exhibits J through M are corporate documents for Auto Supply 1, USA Auto, and USA Wholesale available on the California Secretary of State's website. Exhibits N and O are Motul trademark registrations retrieved from the United States Patent and Trademark Office ("USPTO").[2]

Materials in the online files of the USPTO and other matters of public record are proper subjects of judicial notice. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record." (citation omitted)); *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (Matters of public record include "documents on file in federal or state courts."); *Caiz v. Roberts*, 382 F. Supp. 3d 942, 947 (C.D. Cal. 2019) (taking judicial notice of "File History" downloaded from the USPTO website). The Court therefore takes judicial notice of the USPTO documents contained in Exhibits N and O.[3]

---

[2] The Court has not relied on Exhibits A-I and DENIES AS MOOT Defendants' request to take judicial notice of those exhibits.

[3] Exhibits N and O to the request for judicial notice have not been translated from French to English. The Court's ruling on the request for judicial notice applies solely to the portions of those documents that are in English.

6

Filings with the California Secretary of State are also proper subjects of judicial notice because they are matters of public record whose accuracy is not subject to reasonable dispute. *See Rupert v. Bond*, 68 F. Supp. 3d 1142, 1155 (N.D. Cal. 2014) (taking judicial notice of government website when neither party disputes the website's authenticity or accuracy of the information displayed therein); *Theta Chi Fraternity, Inc. v. Leland Stanford Junior University*, 212 F. Supp. 3d 816, 823 (N.D. Cal. 2016) (taking judicial notice of filings with the California Secretary of State because they are public records). The Court therefore takes judicial notice of the California Secretary of State documents contained in Exhibits J through M.

### 2. Motul Fails to Sufficiently Allege Alter Ego Liability.

Motul alleges that Mr. Fateh "owns, operates, dominates, and controls the corporate Defendants" as his "alter ego companies." (FAC ¶ 10.) Defendants move to dismiss all of the claims asserted against them on the basis that Motul fails to sufficiently allege alter ego liability. Defendants also argue that Motul's fraud allegations are not sufficient under the heightened pleading standard of Rule 9(b). Although a split in authority exists regarding whether Rule 9 applies to alter ego allegations, the Court finds that even if Rule 9 does not apply, Motul's allegations are not sufficient under the more lenient pleading standard of Rule 8.

"The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1135-36 (C.D. Cal. 2015) (quoting *Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 300 (1985)); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 ("[I]n certain limited circumstances, the veil separating affiliated entities may also be pierced to impute liability from one entity to another."). The alter ego theory of liability "is an extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000).

"To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist, and (2) that failure to disregard their separate entities would result in fraud or injustice."

7

*Ranza*, 793 F.3d at 1073 (internal quotations, brackets and citations omitted); *see also Sonora Diamond*, 83 Cal. App. 4th at 538 (under California law, to invoke alter ego doctrine, plaintiff must show "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities . . . do not in reality exist," and "an inequitable result if the acts in question are treated as those of the corporation alone"). Conclusory allegations of alter ego status are insufficient, and the plaintiff "must allege specific facts to support both the necessary elements." *Gerritsen*, 116 F. Supp. 3d at 1136.

To satisfy the unity of interest prong, the facts must show "a unity of interest and ownership such that the separate personalities of the two entities no longer exist[.]" *Gerritsen*, 116 F. Supp. 3d at 1138. The Court may consider the following factors to determine if a plaintiff alleges sufficient facts to make a prima facie showing of unity of interest, although "no single factor is dispositive":

> commingling of funds and other assets of the two entities, the holding out by one entity that is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-cv-04103-BLF, 2015 WL 4593911, at *2 (quoting *Sonora Diamond*, 83 Cal. App. 4th at 538-39) (internal quotation marks omitted).

In the *Payoda* case, the plaintiff alleged that the parent company had the same leadership as its subsidiary, the two entities held themselves out to the public as the same entity, shared headquarters, and commingled assets, "including their facilities, finances, website, email address, phone number, employees and customers." 2015 WL 4593911 at *1 (internal quotations and citations omitted). The court found that these allegations, "without more factual specificity" were not sufficient to allege the requisite unity of interest between the two corporate entities. *Id.*, 2015 WL 4593911 at *3.

Motul alleges that Mr. Fateh "owns, operates, and controls the other corporate entity defendants USA Wholesale, USA Auto, and Auto Supply 1 as his 'alter ego companies.'" (FAC ¶ 10.) Motul alleges, on information and belief, that Mr. Fateh "dominated, influenced, and

8

controlled each of the alter ego companies and the officers thereof as well as the business, property, and affairs" of each corporation. (*Id.*)  Motul also alleges, on information and belief, that the corporate defendants were created to continue a "fraudulent plan, scheme, and device conceived and operated by [Mr. Fateh] to infringe on Motul's trademarks, sell counterfeit Motul oil, and unfairly compete in the auto supply market." (*Id.*)

"An owner's domination and control over a corporation matters when 'the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased." *CTC Glob. Corp. v. Huany*, No. SACV1702202AGKESX, 2018 WL 4849675, at *4 (C.D. Cal. June 5, 2018) (citing *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988); *see. e.g.*, *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("[The] mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law").  Motul has failed to offer more than labels and conclusions regarding Mr. Fateh's alter ego liability or address how its allegations are applicable to the "unity of interest" factors.  Motul's conclusory allegations do not give rise to a plausible inference that Mr. Fateh "dictates every facet" of the corporate entities' business "from broad policy decisions to routine matter of day to day operation." *Ranza*, 793 F.3d at 1073 (quoting *Doe*, 248 F.3d at 926).

Motul also alleges Mr. Fateh is a common owner of all the corporate Defendants.  (FAC ¶ 10.)  "Total ownership and shared management personnel are insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073.  In the *Payoda* case, the plaintiff alleged that the parent company had the same leadership as its subsidiary.  2015 WL 4593911 at *1.  The court found that allegation alone was not sufficient to establish the subsidiary was the "mere instrumentality of the parent." *Id.*  Here, Motul's allegations are not atypical of a normal corporate relationship and, standing alone, are insufficient to establish the requisite unity of interest.

Motul also alleges that the corporate entity defendants commingled assets, including their "inventory of motor products, auto parts, and motor oils" and finances.  (FAC ¶ 10.)  Motul also

9

alleges that the corporate entities are indistinguishable to the public, because they "operate their businesses and sell products out of the same location," the corporate defendants and their sales representatives "use the name of the [companies] interchangeably when selling auto products to retail customers and mechanic shops," and they sell "to the same prospective customers." (*Id.*)

In the *Payoda* case, the court found that the plaintiffs' conclusory allegations that the defendants "'comingle[d] their assets' by sharing 'facilities, finances, website, email address, phone number, employees, and customers,'" were not sufficient to allege the requisite unity of interest "without more factual specificity." *Id.*, 2015 WL 4593911 at *3; *cf. Corcoran v. CVS Health Corporation*, 169 F. Supp. 3d 970, 982-84 (N.D. Cal. 2016) (analyzing alter-ego in jurisdictional context and concluding that plaintiff failed to make prima facie showing of unity of interest where parent shared overlapping officers, presented itself as one integrated company on website, and parent made discrete business decisions for subsidiary).  The allegations in this case are akin to the allegations in the *Payoda* and *Corcoran* cases.  The Court finds Motul's allegations conclusory and require "more factual specificity" to make a prima facie showing of unity of interest.

Motul includes additional facts in its Opposition to support its alter ego allegations, including that Defendants have "common directors and officers," "common operational staff," and "shared offices." (Opp. at 6:13-16.)  In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to the plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  This case is no exception.

The Court concludes that Motul has not alleged sufficient facts to support its assertion that Mr. Fateh, USA Auto, and the other corporate defendants are each other's alter-egos and has failed to satisfy the first prong of the alter ego test.[4]

//

//

---

[4] The Court does not reach the issue of whether Motul has alleged sufficient facts to satisfy the second prong of the alter ego test.

### 3. Motul Alleges Sufficient Facts to Show It Has Standing to Sue for Trademark Infringement.

Defendants argue that Motul fails to allege it has standing to pursue its claims because it fails to show ownership rights to the "MOTUL" trademarks. Motul may establish statutory standing by alleging facts showing that it is "(1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008).

Motul alleges it is the owner of a federal mark registration and submits printouts of the "MOTUL" trademark registrations from the USPTO. (FAC, Ex. A, B, C.) In general, "[r]egistration of a mark 'on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services, specified in the registration.'" *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) (quoting *Brookfield Commc'ns v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999)); *see also* 15 U.S.C. §§ 1057(b), 1115(a). The presumption of validity can be rebutted "by showing that the registrant had not established valid ownership rights in the mark at the time of registration." *Sengoku Works Ltd. v. RMC Int'l., Ltd.*, 96 F.3d 1217, 1220 (9th Cir. 1996). In this case, all three of Motul's trademarks are federally registered; they are therefore entitled to a presumption of validity.

Nevertheless, Defendants contend that Motul has failed to allege ownership in the marks. Defendants argue that Motul is not listed as the current owner in the USPTO registration documents for Nos. 1870921, 1333932, and 6804466. Motul argues that an alternative designation of the Plaintiff in the USPTO documents is akin to a "doing business as" name or tradename, it is not a distinct personage. (Dkt. No. 48, Opp. 6:9-10.) Defendants rely on *Muertos Roasters, LLC v. Schneider* to support their argument that Motul's allegation of ownership is contradicted by the registrant name on the USPTO printouts. No. 222CV00051KJMKJN, 2022 WL 3908432, at *1 (E.D. Cal. Aug. 30, 2022).

In that case, the plaintiff, Muertos Roasters, asserted claims for trademark infringement, but the trademark registration was owned by an entirely different company, Cup Half Full Holdings, Inc. ("CHFH"). *Id.* The plaintiff submitted a declaration from the chairman of both CHFH and Muertos Roasters, which explained that Muertos Roasters was a wholly owned subsidiary of CHFH and that CHFH "transferred and assigned" the trademarks to Muertos Roasters before they filed suit. *Id.* The declaration did not suggest that the assignment had been recorded with the USPTO and was not subject to judicial notice. *Id.* The court granted the defendants' motion to dismiss on those grounds. *Id.* at *2.

The Court concludes that the facts of this case are distinguishable from *Muetros Roasters.* USPTO registration documents for No. 1870921 shows a trademark assignment from "Motul, S.A. Corporation" to "Motul Corporation." (FAC, Ex. A.) The assignment has been recorded with the USPTO. (*Id.*) The change in ownership is also indicated to be "by change of name" with the addresses of both "Motul, S.A. Corporation" and "Motul Corporation" as 119 Boulevard Felix Faure, Aubervillie, France 93300. (*Id.*) *See AECOM Energy and Construction, Inc. v. Morrison Knudson Corp.*, 851 Fed. Appx. 20, 21 (9th Cir. 2021) (holding plaintiff had standing where record demonstrated the original entity owning the mark became plaintiff through various name changes). USPTO Registration No. 1333932 shows a trademark assignment from "Motul S.A. Joint Stock Company" to "Motul Societe Anonyme A Conseil De Surveillance Et Directoire." (FAC, Ex. B.) The assignment has been recorded with the USPTO. (*Id.*) The addresses of both owners are also the same. (*Id.*) The USPTO Registration No. 6804466 is registered under the name of "Motul Societe Anonyme." (FAC, Ex. C.)

The Court concludes that Motul has sufficiently alleged ownership of the "MOTUL" trademarks.

    **4.**    **Motul Fails to Allege Sufficient Facts to State Claims for Trademark Infringement and Unfair Competition, 15 U.S.C. Section 1125(a).**

Defendants move to dismiss Motul's claims for trademark infringement and unfair competition under 15 U.S.C. § 1114, 1125(a) ("Lanham Act"). In order to prevail on its claims for trademark infringement and unfair competition, Motul must show "it owns a valid mark, and

12

thus a protectable interest," and that Defendants' conduct is likely to cause confusion. *See Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009); *Clearly v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994). For the reasons articulated above, the Court concludes Motul is likely to establish it is the owner of the "MOTUL" mark.

The "likelihood of confusion" element asks, "whether a reasonably prudent consumer . . . is 'likely to be confused as to the origin or source of the goods or services bearing one of the marks.'" *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012). "Likelihood of confusion is typically a question of fact." *Automated Pet Care Prod., LLC v. PurLife Brands, Inc.*, No. 22-CV-04261-VC, 2023 WL 3046592, at *2 (N.D. Cal. Apr. 21, 2023) (citing *One Industries, LLC v. Jim O'Neal Distributing, Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009)).

The Ninth Circuit considers eight factors in assessing whether a defendant's use of a mark is likely to confuse customers: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *AMF v. Sleekcraft Boats*, 599 F.2d 342, 348-49 (9th Cir. 1979) ("*Sleekcraft*"). *Sleekcraft*'s "eight-factor analysis is 'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Fortune Dynamic*, 618 F.3d at 1030. "The ultimate question of likelihood of confusion 'is predominantly factual in nature,' as is each factor within the *Sleekcraft* likelihood of confusion test." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002) (quoting *Wendt v. Host Intern., Inc.*, 125 F.3d 806, 812 (9th Cir. 1997)). Additionally, a plaintiff need not "establish that [every factor] weighs in its favor to show likelihood of confusion." *Vapor Spot, LLC v. Breathe Vape Spot, Inc.*, No. 15-CV-02110-MMM, 2015 WL 12839123, at *5 (C.D. Cal. Sept. 15, 2015) (internal quotations and citations omitted).

Motul's mark and Defendants' alleged use of the mark are identical in sight, sound, and meaning. Moreover, it is undisputed that the parties use the "MOTUL" mark in connection with the same services, including the sale of motor oil to consumers and distributors. Motul alleges

that the "MOTUL" trademarks "are highly distinctive, of incalculable value, and universally associated in the public mind with the authentic goods and products upon which they appear and [are also] associated with high-end engine lubricants of the highest quality." (FAC ¶ 34.) Motul also alleges that its trademarks "were famous long before Defendants began using unauthorized reproductions, counterfeits, copies, and colorable imitations on its unauthorized lubricant products." (*Id.* ¶ 36.) Motul offers few facts in support of these legal conclusions. Also, "[b]eyond these allegations, [Motul] merely recites the elements of a trademark infringement suit." *Performance Designed Products LLC v. Plantronics, Inc.*, No. 3:19-CV-00536-GPC-LL, 2019 WL 3082160, at *5 (S.D. Cal. July 15, 2019) (finding that the plaintiff "merely recited an element of trademark infringement, because it provided insufficient facts to plausibly state an allegation that the public is likely to be confused by [d]efendants' use of the mark"). Specifically, Motul alleges Defendants' use of the mark "is causing or likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, right to use, or association of Defendants with . . . Motul, and as to the origin, sponsorship, or approval of Defendants' lubricant product by . . . Motul." (*Id.* ¶ 39.)

The Court concludes Motul has provided insufficient facts to plausibly allege that the public is likely to be confused by Defendants' use of the mark.

### 5. Motul Fails to Allege Sufficient Facts to State a Claim for Trademark Dilution, 15 U.S.C. Section 1125(c).

Defendants also argue that Motul has failed to allege dilution for any of its alleged trademarks. To prevail on a dilution claim, "a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008).

A mark qualifies as famous for the purposes of a dilution claim "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2). "The mark must have acquired the

14

requisite level of fame by the time 'the defendant first began to use the mark in commerce.'" *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1065 (N.D. Cal. 2015) (quoting *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1031 (N.D. Cal. 2015)). "In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) [t]he extent of actual recognition of the mark; and (iv) [w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register." 15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

"Applying these provisions, the Ninth Circuit has concluded that trademark dilution 'is the cause of action reserved for a select class of marks – those marks with such powerful consumer associations that even noncompeting uses can impinge on their value.'" *Arcsoft, Inc.*, 153 F. Supp. 3d at 1065 (quoting *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004). "[D]ilution protection [extends] only to those whose mark is a household name." *Id.* (internal quotation marks omitted).

Motul alleges that its trademarks are famous because, (1) the trademarks are highly distinctive, (2) Motul has used the trademarks continuously for decades throughout the United States to promote its goods and products, (3) Motul has advertised and publicized for decades throughout the United States, (4) the trademarks are widely recognized by the general, consuming public, and (5) the trademarks have a valid registration on the Principal Register. (FAC ¶ 45.)

As with the claims for trademark and dilution, the Court concludes Motul's allegations are not supported by facts. By way of example only, with respect to the "duration, extent, and geographic reach of advertising and publicity of the mark" factor, Motul alleges it has used its mark continuously for decades through the United States to promote its goods and products. (*Id.*) Motul does not allege any additional details regarding its advertising or promoting of the "MOTUL" trademark or the particular contexts in which the "MOTUL" mark appeared in the publications. *See Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 940 (S.D. Cal. 2013)

15

(finding allegations insufficient where plaintiff alleged that "since at least January 2000 [plaintiff] has expended a significant amount of resources in developing goodwill and brand recognition in and for [its] mark," but there were "no specific allegations of online promotions, advertising campaigns, or presence in trade publication").

Additionally, with respect to the "extent of actual recognition of the mark" factor, Motul does not offer any nonconclusory allegations about the extent to which consumers actually recognize the "MOTUL" mark. Motul simply alleges that its trademarks "are widely recognized by the general, consuming public of the United States." (FAC ¶ 45.) *See Arcsoft, Inc.*, 153 F. Supp. 3d at 1067 (finding the allegations, "well-known brand" and "attained widespread and favorable recognition . . . through the United States," conclusory and therefore, not giving rise to a plausible inference of national recognition).

Motul must plead more than conclusory allegations of fame to survive a motion to dismiss, "[g]iven the high burden that a plaintiff faces in establishing that its mark is sufficiently famous to support a dilution claim." *Id.* The Court concludes that Motul failed to plead facts that support a plausible inference that its "MOTUL" mark is widely recognized by the general consuming public of the United States.[5]

### 6. Motul Alleges Statutory Standing Under the UCL.

Defendants argue that Motul fails to state its UCL Claim because it "does not allege . . . lost money or property as a result of [D]efendants' alleged unfair competition." (USA Auto Mot. 16:16-17.) In unfair competition cases, courts may award a prevailing plaintiff injunctive relief and restitution, but not damages. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999) (citations omitted). An order for "restitution" is an order that compels a "defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property[.]" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-45 (2003) (quoting *Kraus v. Trinity Management Services, Inc.*, 23 Cal. 4th 116, 126-27 (2000); *see also*

---

[5] The Court does not reach the issue of whether Motul has alleged sufficient facts to satisfy the second, third, and fourth prongs of the dilution test.

*Cortez v. Purolater Air Filtration Products Co.*, 23 Cal. 4th 163, 177 (2000) (goal of restitution is to restore plaintiff to *status quo ante*).

"Devaluation of a business's intellectual property or intangible business assets is sufficient to meet the injury requirements under [section] 17200." *Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-CV-04895-WHO, 2017 WL 2775030, at *5 (N.D. Cal. June 27, 2017); *see also Am. Soc'y of Anesthesiologists v. BevMD, LLC*, No. 15-cv-600, 2016 WL 4257448, at *5 (S.D. Cal. Mar. 31, 2016) ("Courts have found the diminution to a trademark's value to be a valid economic injury under the UCL"); *Overtock.com, Inc v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 716 (2007) ("[D]imunition in value of [a plaintiff's] assets and decline in its market capitalization and other vested interest" is sufficient to meet the UCL injury requirement.)  "The California Supreme Court has recognized that customer good will, or 'the probability that the old customers will restore to the old place' and 'the probability that the business will continue in the future as in the past,' is a real and protectable property interest." *Rise Basketball Skill Dev.*, 2017 WL 2775030, at *5 (quoting *Bell v. Ellis*, 33 Cal. 620, 624 (1867)).

Motul has alleged that Defendants use of the Motul trademark is likely to cause "injury to Motul's goodwill and reputation." (FAC ¶¶ 70, 71, 75, 77.)  Motul also alleges it received complaints about Motul products sold and delivered by the Defendants, which indicate a diminution in Motul's trademark value. (*Id.* ¶ 20.)  The Court concludes that by alleging a diminution of value in its trademark, Motul alleges economic injury under the UCL.[6]

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, and DENIES, IN PART, Defendants' motion to dismiss.  If Motul chooses to amend its allegations, it shall file a Second Amended Complaint by August 29, 2023, and Defendants shall answer or otherwise respond within the time period required by the Federal Rules of Civil Procedure.

//

---

[6] Defendants also move to dismiss on the basis that the FAC is a sham pleading, based on an email from Motul's counsel.  The Court DENIES the motion to dismiss on this basis.  *See, e.g.*, *PAE Government Services, Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007).

The Court will schedule a case management conference if Motul chooses to amend.

**IT IS SO ORDERED.**

Dated: August 8, 2023

_____
JEFFREY S. WHITE
United States District Judge